UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUZANNE CORDON,  )
 )
      Plaintiff,  )
 )  Case No. 09 C 5146
    v.  )
 )  Judge Joan B. Gottschall
CENTEX HOMES, a Nevada General  )
Partnership,  )
 )
      Defendant.  )

## **MEMORANDUM OPINION & ORDER**

Plaintiff Suzanne Cordon alleges that Defendant Centex Homes Bank ("Centex") illegally retaliated against her for complaining of sexual harassment and for filing charges with the Equal Employment Opportunity Commission ("EEOC"). Cordon claims that Centex refused to promote her, then laid her off and refused to rehire her, in violation of 42 U.S.C. § 2000e-3. Centex now moves for summary judgment. For the reasons set forth below, Centex's motion is granted.

### **I. BACKGROUND**

The relevant facts are as follows.[1] Centex is in the business of building and selling new residential properties throughout the United States. Cordon was hired by

---

[1] The facts that are necessary to the resolution of the issues presented should have been contained in the parties' briefs and statements of facts pursuant to Local Rule 56.1. But while both parties generally followed the form prescribed by LR 56.1, they did not adopt the spirit. For instance, a number of facts that are critical to the legal issues at hand are either omitted or referenced only in the briefs. Two illustrative examples: Centex does not mention the existence of Cordon's EEOC charges once in its statement of material facts (or, for that matter, in its briefs); similarly, in her statement of facts Cordon does not provide important information regarding the title of certain employees that she claims are appropriate comparators. The court determined some of these facts from the briefs; for some, the court reviewed portions of the record. Not only was that review difficult, as the court was provided with heavily excerpted portions of various transcripts,

Centex in January of 2005 to work as a New Homes Sales Assistant ("Assistant"). As an Assistant, it was Cordon's primary responsibility to assist those working as New Home Sales Consultants ("Consultants") in a particular "sales community." Cordon's sales community was called Sable Ridge. From August 2005 until September 2006, Cordon's direct manager was Steve Atchison. However, it was Gregory Ford, the Director of Sales, who made all promotion and termination decisions.

In January of 2006, Cordon told Atchison that she had been sexually harassed by one of her co-workers. Together, Cordon and Atchison prepared a written complaint regarding Cordon's concerns. Within one week, Centex had completed its investigation

---

but it is not the court's job to "sift through the record and make [a party's] case for him," *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510-11 (7th Cir. 2010).

The briefs are not much better. The parties pay lip service to the legal standards, but numerous arguments are not supported with relevant precedent. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that '[i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel,' and we have warned that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'") (citation omitted). The parties also do not seem to appreciate the meaning of an "undisputed fact"—for instance, Centex insists that the decisionmaker had no knowledge of the harassment complaint until after he made the promotion and termination decisions. Yet as Cordon points out, one of the employees submitted an affidavit stating that he told the decisionmaker about the complaint at the time it happened; the decisionmaker himself also testified at certain points that he did not recall when he learned of the complaint. This fact is in dispute (although it turns out not to be material) and the court should not be informed otherwise. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("A district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.' And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.") (citation omitted).

Because there are issues on both sides, the court has addressed the arguments and attempted to glean any additional necessary facts where possible. To the extent that certain facts are considered herein, they are deemed to be admissible unless indicated to the contrary in the Analysis section. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (noting that at the summary judgment stage, the court is only to consider facts that are supported by evidence that would be admissible at trial).

into the complaint; Cordon was informed that the alleged harasser's employment had been terminated. Cordon agrees that Centex took her complaint seriously. After that incident, neither Atchison nor Ford ever mentioned the complaint to Cordon, nor did they ever indicate any disapproval of Cordon for filing a complaint.

Centex Assistants, together with their immediate supervisors, complete "Growth Reviews," wherein the Assistants list a series of goals for the next quarter and award themselves a "self score" letter grade for various qualitative achievements. These Growth Reviews may be modified by the Assistant's supervisor. In April of 2006, Cordon completed a Growth Review; upon evaluation, Atchison downgraded some of the letter grades Cordon had awarded herself. Thereafter, due to the decrease in home sales and home prices, Centex began eliminating sales positions. In September of 2006, Atchison's position was eliminated and Andreas Rubien became Cordon's new supervisor. In October of 2006, Cordon's Growth Review was evaluated by Rubien; again, he downgraded some of Cordon's self-awarded ratings. In both the April and October 2006 Growth Reviews, Cordon's final evaluation contained all A's or B's.

After working as an Assistant for a year, Cordon felt she deserved to be promoted to a Consultant or junior Consultant[2] position. Cordon could only be promoted if there was an open position, and during her time with Centex, just two opportunities for a promotion occurred. Cordon was not promoted. Instead, in December of 2006, April Mayse and James Hall were promoted to Consultant positions.

In January of 2007, Cordon was "mystery shopped" by a third-party vendor hired for the purpose of secretly evaluating Centex employees. After the mystery shopper left

---

[2] The parties do not discuss the distinction between the two positions in their briefs or statements of fact.

the sales office, Cordon complained to Rubien that the customer made her feel unsafe; she speculated that the customer was a mystery shopper who would give her a low score. Indeed, Cordon received an overall score of 28.47%; the one-word description given by the mystery shopper was "unprofessional." Cordon told Rubien that she thought the evaluation was unfair. She mentioned her sexual harassment complaint and claimed that she had been targeted for a mystery shop in order to "sabotage" her chances at a promotion. Rubien told Cordon that the shopper's report was not a true reflection of her work and that he would not use the report to evaluate or criticize Cordon's performance. Rubien also told Cordon that he did not know much about the sexual harassment complaint, but that the harassment allegations were not the reason why she had been selected for evaluation by the mystery shopper.

On February 1, 2007, Rubien provided Cordon with a written action plan. In the plan, he identified five general areas of improvement and provided a number of specific action items. For instance, Rubien noted that Cordon's objectives should include improving her knowledge of the sales process, competitors, and financing.

Later that month, Centex performed an additional round of layoffs. Cordon was let go. At the same time, three other Assistants—Jennifer Trautvetter, Brent Elstrom, and Nancy Ann Stuecklan, none of whom ever made claims of sexual harassment—were also let go. Rubien was not involved in the decisionmaking process; instead, he was given the names of the people selected and told to "handle it." Cordon was informed of the decision by telephone on February 12, 2007. Cordon had been informed by phone because she indicated she could not attend a meeting due to a doctor's appointment; at the time, Cordon was being evaluated for breast cancer. A few days later, Rubien and

Ford told Cordon that although her position had been eliminated because of market circumstances, she would be allowed to remain an employee without a position so that she could maintain health insurance and disability benefits. She was also told that upon her release to work, she would be considered for any open positions for which she was qualified in lieu of immediate termination.

Although neither party's statement of material facts makes mention of the EEOC, it appears that Cordon filed charges with the EEOC on February 26, 2007, alleging that Centex illegally retaliated against her in response to her sexual harassment complaint by failing to promote her and terminating her employment. The next day, the EEOC sent a notice to Centex's human resource manager informing Centex of the charges. Cordon was cleared to return to work in mid-March 2007, and Centex considered her for the only two positions available at that time: Assistant Controller and Financial Analyst. Cordon was not qualified for either position. Rubien thus informed Cordon that Centex would be terminating her employment due to the reduction in force. Cordon's employment was terminated March 15, 2007.

In January of 2008, Centex rehired two people, David Hojnacki and Michael Hamilton, as Consultants. Both had been Consultants for several years before voluntarily resigning their positions in June of 2007. Amber Nebren—an Assistant who was let go in September of 2007—was also rehired in January of 2008 and worked at least occasionally in the Sable Ridge sales community. In addition, Veronica Garcia was transferred to the Sable Ridge community in February of 2007. Cordon was never rehired.

## II. DISCUSSION

**A. Standard of Review**

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, all facts and any inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court is not required to make every conceivable inference in the non-movant's favor; instead, only *reasonable* inferences must be drawn. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

Further, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts"; a mere "scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Thus, once the moving party has satisfied its initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact," *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007) (internal quotations and citations omitted), the non-moving party must come forward with sufficient evidence to "allow a jury to render a verdict in her favor." *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 563 (7th Cir. 2000). If a plaintiff fails to establish one of the elements of her case and there is no factual dispute regarding that element, summary judgment will be entered in favor of the defendant. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 892 (7th Cir. 2005).

**B. Analysis**

Cordon claims that she was passed up for a promotion, her employment was terminated, and Centex refused to rehire her in violation of 42 U.S.C. § 2000e-3 because she complained of sexual harassment and filed charges with the EEOC.[3] She admits that she has no direct evidence of this retaliation, and thus proceeds entirely under the indirect method.

To make out a *prima facie* case of retaliation via the indirect method, Cordon must establish that: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's expectations; (3) she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Vance v. Ball State Univ.*, --- F.3d ----, 2011 WL 2162900, at *9 (7th Cir. 2011); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007) ("Alternatively, the employee may proceed under the indirect approach and show that after he complained of discrimination, he, and not any other similarly situated employee who did not complain, was subject to an adverse action although he was performing up to the employer's legitimate job expectations."). In the context of a "failure to promote" claim, the *prima facie* case is tweaked slightly: in

---

[3] Based on the briefs and the complaint, Cordon does not appear to allege that the "mystery shop" itself was retaliatory, although in her EEOC charges she specifically stated that the mystery shop review was an adverse employment action. To the extent that Cordon is making this claim, the court does not agree that being subjected to an undercover evaluation is an adverse employment action. *See Oest v. Ill. Dep't Corr.,* 240 F.3d 605, 613 (7th Cir. 2001) ("[U]nfavorable performance evaluations alone d[o] not constitute adverse employment actions."); *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 654 (7th Cir. 2001) (stating that secretly videotaping an employee is not a materially adverse action); *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998); *Morrow v. Potter*, No. 10 C 2772, 2010 WL 3700022, at *2 (N.D. Ill. Sept. 10, 2010) ("Plaintiff's allegations—for example, that the USPS sent mystery shoppers to her retail window . . . —do not include a quantitative or qualitative change in employment status.").

addition to her statutorily protected activity, Cordon must show that (1) she was qualified (and, where applicable, applied) for the position sought, (2) she was rejected for that position, and (3) the position was granted to a similarly situated (or less qualified) employee who did not engage in the protected activity. *See Jordan v. City of Gary, Ind*., 396 F.3d 825, 833 (7th Cir. 2005); *Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 900 (7th Cir. 2003).

"Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008) (internal quotation omitted). But if Cordon establishes a *prima facie* case of retaliation, the burden then shifts to Centex to provide an admissible, non-discriminatory reason for the adverse decision. *Johnson*, 325 F.3d at 900; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once Centex comes forward with such evidence, the ultimate burden shifts back to Cordon to "present legally sufficient evidence that would support an inference that [Centex] really was acting out of an invidious purpose." *Johnson*, 325 F.3d at 900.

1. Failure to Promote

Centex does not appear to dispute that Cordon's complaint of sexual harassment in January 2006 and her decision to file EEOC charges constitute statutorily protected activity under Title VII.[4] It is also undisputed that Cordon never received a promotion to her desired Consultant or junior Consultant position. And while Centex seems to argue that failure to promote is not an adverse employment action (*see* Def.'s Br. in Support, ECF No. 25, at 16), the law is clear: "the retaliatory denial of a promotion is a materially

---

[4] Of course, for Cordon's failure to promote claim, only the former is relevant; Cordon did not file her EEOC complaint until after the two promotions at issue occurred.

adverse action." *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009). Thus, to successfully make out her *prima facie* case of retaliation for failure to promote, Cordon must show that she was qualified for the Consultant position, and the promotions were given to similarly situated (or less qualified) employees who did not complain of harassment.

The court turns first to the requirement that Cordon point to a similarly situated comparator. "The purpose of the 'similarly situated' comparator element is to ensure that all other variables are discounted so that an inference of unlawful intent would be reasonable." *Silverman v. Bd. of Educ.*, 637 F.3d 729, 742 (7th Cir. 2011). For this reason, "the comparators must be similar enough that any differences in their treatment cannot be attributed to other variables." *Id.* To be "similar enough," *id.*, the employee must be "comparable to the plaintiff in all *material* respects. In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008) (internal quotations and citations omitted).

There is no question that Hall and Mayse, the two people Cordon identifies as being promoted over her, held the same job description. They were both hired as Assistants and promoted to Consultants. The parties also do not appear to dispute that Gregory Ford is the relevant supervisor, as he is the individual who made all sales promotion decisions. Thus, the relevant issues in determining whether Hall and Mayse

are similarly situated to Cordon are whether they were subject to the same standards—a topic not expressly addressed by either party—and whether they had comparable qualifications. According to Centex, Cordon's supervisors simply did not believe her to be qualified for a promotion. Centex claims that since it is undisputed that the supervisors were in the best position to evaluate Cordon's readiness, and she has nothing but her self-evaluations to contest their conclusions, her "failure to promote" claim cannot succeed. For her part, Cordon claims that she was as qualified or more qualified for the promotions, because she had more seniority at Centex and more sales experience than both Hall and Mayse, and she received higher grades on her performance reviews than Mayse.

The first two points do not suffice to show that Cordon was as qualified as the promoted employees. First, "[y]ears of experience . . . are not necessarily determinative of qualifications for a promotion." *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008). Here, Cordon has failed to connect the dots; she has not demonstrated that "longevity equates to superior qualifications or that [the employer] promotes on a basis of seniority." *Id.* Because she has not identified any evidence that her employer considered longevity relevant to promotion decisions, she has not established that she was more qualified than either Hall or Mayse in this regard. *See Hall*, 536 F.3d at 620; *Warren*, 516 F.3d at 630-31.

As to her second claim—that she had more "sales experience"—the court is not clear on the nature of Cordon's argument. Cordon has not defined the term (it could, for instance, refer to the actual number of home sales that each employee participated in closing or prior employment experience), and she does not direct the court's attention to

specific evidence in support of her claim to greater experience. Nor does she point to any particular facts to show that this undefined experience was relevant to a promotion decision. In addition, because these are the only two comparisons she makes with respect to Hall's qualifications, she has not shown that she was as qualified as Hall for the promotion he received.

With respect to the performance reviews, Cordon fares a bit better. The parties dispute whether the Growth Reviews are self-awarded or whether the reviews instead reflect the considered evaluation of an Assistant's manager. Cordon asserts that the Growth Reviews prove that she was qualified for a promotion. She compares her reviews to those of Mayse, claiming that she was more qualified for the promotion because she scored higher "in the areas of product knowledge and finance knowledge." (*See* Pl.'s Mem. in Opposition, ECF No. 31, at 12.) True, Cordon admits that the reviews are "jointly prepared"—*i.e.*, the employee being reviewed is responsible for at least some of the content—and that both Rubien and Atchison downgraded certain of her self-awarded letter grades. (*See* Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ECF No. 32, at 4.) And Cordon has not established what portion of each evaluation can be attributed to her managers, although she seems to have overestimated her own abilities relative to how she was perceived. But the court is required to draw the reasonable inference in her favor, and therefore will assume that the reviews as finalized accurately reflect a manager's opinion of an employee's work.

Cordon has also directed the court's attention to evidence that the Growth Reviews were used by Ford. Although Ford testified that he had no input in preparing the reviews, he also stated that they were a "very important" tool in making promotion

decisions. (*See* Pl.'s App., ECF No. 33, Ex. B at 15.) Further, Centex itself claimed that to be promoted, Cordon had to demonstrate "full command of the Centex sales process," including a "command of and the ability to explain the financial aspects of home sales, the ability to successfully work with and manage difficult customers, ongoing knowledge of competitor information and pricing, and the ability to understand the reasons for and overcome customer resistance to a home purchase," (*see* Pl.'s Resp. to Def.'s Statement of Undisputed Facts, ECF No. 32, at 3.) If the reviews are accurate, then Cordon's higher ratings in the areas of "product knowledge" and "finance knowledge" would be relevant to promotability.

On this point, Cordon might establish that she was at least as qualified as Mayse for a promotion. However, that is not the end of the "similarly situated" inquiry. Cordon does not address whether she and Mayse were subject to the same standards—an issue that needs addressing, as it appears to the court that Mayse was assigned to a different sales community (Hampton Glen or The Crossings at Wolf Creek) than Cordon (Sable Ridge). (*See* Pl.'s App., ECF No. 33, Ex. D-2 to D-4.) Beyond that, Cordon has not addressed which of the many differences between herself and Mayse might have been relevant to a promotion decision. For instance, Cordon does not address her own education or relevant prior work experience, nor does she compare her disciplinary record to Mayse's. Because the court has not been provided with the requisite framework to determine whether these or any other factors were relevant to Centex's promotion decision, the court is left without the tools it needs to evaluate whether Mayse is similarly situated. The court finds that Cordon has not met her burden of showing that Mayse or Hall is an appropriate comparator. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263,

274 (7th Cir. 2004) (affirming summary judgment where plaintiff failed to identify "any coherent method of analysis" to evaluate the candidates she alleged were unlawfully promoted over her). Because Cordon has not identified a similarly situated employee who promoted over her, she has not carried her burden of establishing a *prima facie* case of retaliation.

Cordon's *prima facie* case is deficient in another respect. To show that the promotion decision was retaliatory, Cordon must establish that the position was granted to a similarly situated employee who did not engage in a protected activity. *See Jordan*, 396 F.3d at 833; *Johnson*, 325 F.3d at 900. Cordon has not argued, much less provided evidence, that Hall or Mayse did not also file complaints alleging acts of harassment. For this reason as well, Cordon has not established her *prima facie* case.

2. Termination

The court next addresses Cordon's termination. As before, Cordon does not make it past the *prima facie* step of the *McDonnell Douglas* analysis; she again stumbles on the "similarly situated" requirement. Cordon must establish that: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's expectations; (3) she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Roney v. Ill. Dep't of Transp.*, 474 F.3d at 459.

Cordon was let go in February of 2007, at the same time that three other Assistants—Trautvetter, Elstrom, and Stuecklan—were let go. Centex paints a dark picture of the troubled housing market around the time of the layoffs. Cordon admits that in the last three to five years, new home sales and home prices have fallen. (*See* Pl.'s

13

Resp. to Def.'s Statement of Undisputed Facts, ECF No. 32, at 6.) She also admits that in response to this pressure, Centex began eliminating sales positions as early as September of 2006—including that of Atchison, her one-time supervisor. (*Id.* at 6-7.) Cordon further acknowledges that in January of 2007, Centex eliminated additional Assistant positions; while she argues that her position was not actually "eliminated," she apparently has no compunction about admitting that the other three positions were in fact eliminated at that time. (*Id.* at 7.) And interestingly, it is Cordon herself who posits that Ford focused on the Assistants instead of the Consultants during the February 2007 lay-offs because the Consultants "were highly qualified and needed to continue running the business successfully." Cordon goes on to state that "Ford selected employees for the reduction in force based on the employee's performance."[5] Not surprisingly, Centex does not dispute this conclusion. (*See* Def.'s Resp. to Pl.'s Statement of Undisputed Facts, ECF No. 36, at 9-10.) Finally, Cordon recognizes that Trautvetter, Elstrom, and Stuecklan never made any complaints of sexual harassment, and yet they were let go as well.

In light of these facts, and the fact that Cordon was not let go until a second round of layoffs (which took place more than a year after she made her sexual harassment complaint[6]), it simply is not reasonable to infer that Cordon's termination was retaliatory. *See Goetzke v. Ferro Corp.*, 280 F.3d 766, 775 (7th Cir. 2002) ("In analogous Title VII cases, we have concluded time lapses similar to the one present in this case, without

---

[5] It bears mentioning Ford testified that his own position was eliminated just a few months after he conducted these layoffs. (*See* Def.'s Supp. App., ECF No. 35, Ex. M, at 9-10.)

[6] As the EEOC charges were not filed until after Cordon was let go, they are only relevant to her "failure to rehire" claim.

more, fail to create an inference of retaliation. In fact, we have stated that "substantial time lapse between protected activity and the adverse action is counter-evidence of any causal connection." (quoting *Johnson v. Univ. of Wis.–Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995) (citation omitted)).

Even if the court would draw that inference, Cordon has not established that she was treated less favorably than similarly situated employees who did not file a complaint. Many of her arguments are directed to Trautvetter, Elstrom, and Stuecklan—employees who were let go at the same time, and who can indicate nothing in regard to Cordon's allegedly less favorable treatment.

Cordon also points to Amber Nebren and Veronica Garcia as similarly situated individuals. First, Nebren and Garcia both appear to have been let go at some point in the following months. (*See* Pl.'s App., ECF No. 33, Ex. D-13 to D-16.) Second, Cordon provides no argument or indication as to why Garcia should be considered similarly situated; and the court notes that Garcia's termination form indicates that Garcia was a receptionist when she was laid off, not an Assistant. (*Id.* Ex. D-15.) With no information regarding Garcia's job duties or any comparison between Cordon's performance and Garcia's, Cordon has not met her burden of establishing that Garcia was similarly situated. Third, as to Nebren, Cordon attempts to undertake the same analysis that she attempted with Mayse, *i.e.* comparing Growth Reviews. But while the evidence established that Ford used Growth Reviews in making promotion decisions, he also testified that the reviews were not intended for use in termination decisions (*see* Pl.'s App., ECF No. 33, Ex. B at 14), a statement that Cordon does not contest. As there is no

other evidence as to how Cordon stacks up against Nebren, the court cannot conclude that they are similarly situated.

Thus, Cordon has not established that any similarly situated employee was treated more favorably with respect to her termination. In addition, Cordon has not even discussed the issue of whether Garcia or Nebren filed their own complaints, providing yet another reason for the court to find Cordon has not established her *prima facie* case. *See Rogers v. City of Chi.*, 320 F.3d 748, 755 (7th Cir. 2003) (affirming grant of summary judgment where plaintiff failed to establish whether the other employees had engaged in protected conduct).

### 3. Failure to Rehire

Cordon's claim that Centex retaliated by refusing to rehire her falls short for many of the same reasons. The court will not needlessly repeat the standards and analysis above; suffice it to say, Cordon has not established that a similarly situated employee who did not engage in the statutorily protected activity was treated more favorably. Cordon would highlight four employees as being similarly situated in regard to this issue—Nebren and Garcia, as well as David Hojnacki and Michael Hamilton. For the same reasons given above, Cordon has not satisfied her burden of showing that Nebren and Garcia are appropriate comparators.

As to Hojnacki and Hamilton, Centex rehired both as Consultants in January of 2008. Both were "seasoned salespeople" who had worked as Consultants for several years before voluntarily resigning their positions in June of 2007. (*See* Pl.'s Resp. to Def.'s Statement of Material Facts, ECF No. 32, at 12.) The evidence established that Consultants are not comparable to Assistants; they do not hold the same job title, nor do

they have the same responsibilities. In fact, Cordon herself claims that Assistants are "at the bottom rung of the sales hierarchy," (*see* Def.'s Resp. to Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts, ECF No. 36, at 1). Consequently, these two employees are not comparable to Cordon. *See, e.g.*, *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir.2004) (finding that employees were not similarly situated because they were higher ranking than the plaintiff).

Without a similarly situated comparator, Cordon cannot satisfy her obligation to make a *prima facie* showing that Centex illegally retaliated against when it refused to rehire her. Because she also did not establish a *prima facie* case with respect to her failure to promote and termination claims, she cannot survive summary judgment.

Cordon has not satisfied her obligation to set forth a *prima facie* case of retaliation, and so the court need not proceed further. The court briefly notes, however, that Centex has provided a non-retaliatory justification for its employment decisions. With respect to the promotions, Ford testified that he had issues relating to Cordon's absences and behavior, and that he regarded Hall and Mayse as better qualified. As to the termination and rehiring decisions, Centex firmly established that its business was suffering and that it had to lay off a number of employees in response. Centex also established, and Cordon admits, that Centex considered her for the open positions when she came off medical leave, but that Cordon was simply not qualified for those jobs. The court does not find it plausible to think that Centex terminated the employment of numerous employees simply to hide its retaliatory motive. *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 785 (7th Cir. 2004) ("[W]e think it ridiculous

to suggest that [the defendant] would terminate nine other employees . . . on the pretense of economic hardship, just so it could cover its tracks with respect to [the plaintiff].").

### III. CONCLUSION

As the Seventh Circuit has noted, "saying so doesn't make it so"—there must be admissible evidence that creates a genuine issue of material fact to survive summary judgment. *5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d at 510. Cordon's inability to identify a similarly situated employee means that she cannot establish one of the elements of her case, and therefore the court will grant summary judgment. *See Johnson*, 426 F.3d at 892.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 15, 2011